**Rachel Tye BAKER et al., Appellants,**

v.

**Vera S. COMBS et al., Appellees.**

Court of Appeals of Kentucky.

Feb. 1, 1957.

Willis W. Reeves, Hazard, Rudy Yessin, Frankfort, for appellants.

D. G. Boleyn, E. C. Wooton, Hazard, Carl L. Combs, Lexington, Bert T. Combs, Prestonsburg, for appellees.

MOREMEN, Judge.

This appeal seeks to determine the correct location of an alley in the city of Hazard. The parties stipulated that an alley, 15 feet in width, existed and extended between Jail and Campbell Streets, but disagreed sharply where it was situated on the ground. The record contains voluminous proof, maps, charts, and copies of deeds all of which appear to be, in some degree, conflicting.

Prior to February 14, 1914, W. H. Miller and his wife Mahala Miller owned all the property in a certain block in Hazard which was bound on the north side by Jail Street, on the south side by Campbell Street, on the east side by High Street and on the west side by Main Street, with the exception of a lot located on the corner of

Main and Campbell Streets and a lot located on the corner of High and Campbell Streets.

On February 14, 1914, W. H. Miller and his wife conveyed to J. G. Campbell all the land they owned which fronted on Main Street. At the time of this conveyance no alley extended from Jail to Campbell Street. On April 11, 1914, the new owners sold a lot from their property situated at the corner of Jail and Main Streets to Perry County and it eventually became the site of the Perry County jail. The particular description on this deed reads:

"Beginning on a stake at the corner of Main and Boggs Street; thence N 14 50 E 66 feet to a stake; thence N 81 45 W 85 feet to a stake; thence S 6 36 W 60 Feet to a stake; thence S 88 45 E 75 feet to the beginning."

None of the maps identifies Boggs Street and neither is it explained by the testimony given. About the only thing that seems certain from the maps and the proof is that this lot is located at the northwest corner of the block. Careful study of the map has failed to give us any indication of the depth of the lot from Main Street back to where the purported alley might be. This deed to the county, however, contained this provision:

"There is also granted and conveyed by this deed unto the second party, the right to have kept open, and for the use of the second party its successors and assigns, an alley which shall include all the strip between the eastern end of this property and the property of W. H. Miller."

We do not have to discuss the sufficiency of the description in connection with the dedication because the parties have stipulated that such an alley exists, but it is noted that since the lines of the county's strip and the lines of the property belonging to W. H. Miller are coincidental, it is impossible to place a 15-foot strip between them as called for by the above language. This fact indicates that the parties intended the 15-foot strip to be taken from the property being conveyed. They had no right to dedicate an alley across land belonging to the Millers.

The lot immediately abutting the county property to the south was conveyed by deed dated April 13, 1914, to Hazard Wholesale Baking and Supply Company. The particular description uses the corner of the Perry County jail site lot as a beginning point and we gain no helpful information as to location on the ground from the descriptive words used.

As to the alley, this provision was made:

"It is understood and a part of this trade that the parties hereto shall have an alley opened, at the back of said lot, 15 feet wide, for the use of the parties hereto, and shall run across the back of this lot, in the event that an alley is opened through the back of the line of lots in this block."

This dedication, unlike the previous deed, indicates that the 15-foot alley "shall run across the back of this lot." In other words, the alley would constitute the rear portion of the lot conveyed.

The next adjoining lot to the south was conveyed to Hazard Lodge No. 145 of the Independent Order of Odd Fellows. This description also begins at a corner of an abutting lot which adds no certainty to the lots already described. As to the alley, it was said:

"It is agreed by the parties hereto that an alley 15 feet wide shall be opened at the back of said lot to be used by the parties hereto subscribing."

The parties subscribing, of course, were the grantors and if an easement was being created, necessarily it was an exception from that portion of the land which was being conveyed by the same instrument.

The next abutting lot to the south was conveyed to Allen Deaton and this deed purported to begin at a point in the southern end of the block unlike those heretofore discussed whose location depended upon a point in the northern end of the block. This lot was tied up with the lot on the southwest corner of the block and began on a stake on Main Street at the northwest corner of the Commercial Hotel lot. If the Commercial Hotel lot may be located with any degree of accuracy, we may have some clue to the location of the other lots. In this deed, the alley provision was as follows:

> "It is agreed by the parties hereto that an alley 15 feet wide shall be opened at the back of said lot to be used by the public * * *."

However, we have been unable to locate this corner lot. Two maps were filed which were prepared by W. G. Bobbitt; one undertakes to give the layout of the entire block with which we are concerned, but this large map gives neither distances nor descriptions and has been of no value in determining exact locations. The second map filed by the same surveyor gives some few directions and distances insofar as the eastern half of this block is concerned, but shows no distances or directions in connection with the western half of the block which is the one with which we are most vitally concerned. It is interesting to note in this connection that when certain of his descriptions are projected, they do not coincide with the lines shown on the map if we take as being true north the direction indicated on the map. The two maps, above referred to, were filed by appellees. Appellants filed a map prepared by John Fitzpatrick and this map discloses marked similarity to the first map described above and contains neither description nor measures of distances. It differs from the first map above described only in that the alley, which lies approximately at a halfway point in the middle of the block, is definitely shown to be there by lines arbitrarily drawn.

The remaining lot has a description which was drawn with some particularity and probably would give us some clue toward a solution of this case if we had been supplied with a well-defined starting point and a map upon which to plot the remaining area of the lot.

The contention of the parties boils down to a solution of the question of whether it was the intention of the grantors to dedicate an alley over the back 15 feet of the property described and conveyed. It is apparent that the grantors could not have dedicated an alley on property belonging to the Millers whose property abutted all of these lots we have described at the rear or easterly side of the lots conveyed.

From the foregoing, it may be seen the trial court was faced with a record which was incomplete in many phases, but upon submission, in a written opinion filed, he decided that the lot belonging to Vera S. Combs and Vera H. Salyer, whose title had been derived through the Millers, was situated in the easterly half of the block facing High Street and was not traversed by the alley. This ruling had the effect of placing the alley across the rear portion of the lots which faced on Main Street and whose immediate owners had derived title through Campbell and Holliday who had created the easement by deeds above discussed. He was fortified in this position by the fact that the Millers had erected a building on the back end of their property over a portion of the land which appellants now contend was the dedicated alley.

The court said in part:

"The Millers held on to their property up until about 1940, and had erected a large tin building on the back of the property which fronted on Campbell Street, this the date of erection of this building is not clear in the record, except we know that from the record that it was before 1919, and it remained there and was still there on August 6, 1940, and there was an alley opened up and used, on the lower

side of that building in back of the Jail Street, thus, the record is clear that an alley was opened up from Jail Street to Campbell Street across the back of all the lots, claimed by the defendants in this action, and was used continuously by the public for more than 20 years.

"Therefore, the Court finds that there was an express dedication by J. G. Campbell and Tolbert Holliday and by their grantees in accepting their deeds from them of a passway or alleyway 15 feet in width across the back of their lots and the continuous use thereof for such a period of time shows a dedication of the alleyway across all of the lots from Jail Street to Campbell Street and an acceptance by the City of Hazard."

We believe the court's conclusion was the only sound one to be reached under the condition of the record. However, it is necessary to discuss specifically several grounds that appellants urge as reversible error.

Appellants insist a deed executed October 16, 1940, in which Mahala Miller is the grantor and K. N. Salyers the grantee, is void and, since the court used the description in this deed to fix the boundaries of the property conveyed, his decision was erroneous. It is true that the description in this deed is more specific than the original deed through which Mahala Miller received title. It is contended that the grantor, Mahala Miller, had been divested of all title in the land at the time of the purported conveyance and therefore the deed is ineffectual in its entirety and the description used should not be considered. This property had been acquired by Mahala Miller in 1927. The Perry Bank and Trust Company held a mortgage on this land and there were numerous other lien claimants. Court action resulted in a sale of the property and title was transferred from Mahala Miller to the Perry Bank and Trust Company. K. N. Salyers acquired title and possession of the property from the bank's receiver by deed dated April 13, 1933. On October 16, 1940, Mahala Miller conveyed by deed any interest she might have in this property. It is true that perhaps it was not necessary for this second deed to be executed but we do not know the full particulars concerning whether or not Mahala Miller was making a claim of right under her old deed. Evidently Salyers had some doubt about the sufficiency of his title and preferred to have a new deed rather than rely upon the correctness of all the proceedings in connection with the receivership of the bank and the foreclosure sale. In any event, the vesting of title to this particular piece of property is not at issue and it may be assumed that Salyers received all the property which Mahala Miller owned. The court, in the foreclosure proceeding, sold only that property which she possessed. The judgment added nothing to the validity of the title or the quantity of land conveyed; neither did the deed executed by Mahala Miller by nature of a quitclaim. But these actions did not preclude the court, in the instant case, from concluding that the description in the quitclaim deed truly represented the area of ground which she owned and which she conveyed either by compulsory court judgment or by voluntary conveyance.

Appellants next specifically attack the maps introduced by W. G. Bobbitt and contend that he did not fix a starting point. It is argued that the Fitzpatrick map started with an established corner and therefore should be accepted. We have discussed these maps heretofore and find that no one of the maps starts at a point definite enough to admit accurate plotting of the surfaces contained within the boundaries and therefore they were of no assistance to the court. Fitzpatrick contends that he started his map at an established corner. However the dispute in this case is not as to the outside boundaries, but only as to the exact location of an alley which purports to bisect the block. Fitzpatrick admitted there was no difference between the maps regarding the ouside boundaries, but,

as we have pointed out, Fitzpatrick's map differs only from one of the Bobbitt maps in that, without distances and directions shown on his map, a purported alley is arbitrarily sketched in. For that matter, the Bobbitt maps show the corners in the same manner as does the Fitzpatrick map.

Appellants next contend that there had been a boundary agreement between the parties. The trial court properly ignored such a contention because the proof did not support such an agreement. In fact, one of the appellants testified: "I don't know that there was a specific agreement about it but it was an understood proposition. The alley had been there since 1921 and I don't know how many years before."

 Finally appellants argue that appellees, because of certain actions by their predecessors in title, are estopped to assert that the alley lies where the court fixed it. It is pointed out that on one of the alleys is a brick building which was constructed without objection in full view of appellees' predecessors in title. Perhaps there would be some value to this argument if the owners had stood by silently and watched another construct a building on their property, but here we have involved a purpresture, a construction of private property upon a public way. Adjoining property owners to a public way have no particular duty to object if one of the abutting property owners encroaches upon that public way. The objection, it seems to us in the case of a dedicated highway, should come from the governmental agency which has control of it. We find no reason for invoking the doctrine of estoppel, particularly in view of the fact that this issue was not joined by the pleading.

In Wood v. Harmon, 288 Ky. 746, 157 S.W.2d 292, a case that involved a boundary dispute, we said that where the record does not disclose that the chancellor's finding was against the weight of the evidence, the judgment will not be disturbed.

In Hensley v. Stinson, Ky., 287 S.W.2d 593, 594, decided after the Civil Procedure Rules were adopted, we said:

"We find no merit in Hensley's contention that the findings of fact concerning the location of the disputed boundary and the retaining wall are erroneous. Under CR 52.01, we will not set aside such findings unless they are clearly erroneous. At the trial, both parties introduced surveyors who testified in support of their respective positions. The record reveals adequate evidence to support either view, and under these circumstances we are unable to conclude that the findings of the trial judge in this respect are clearly erroneous."

After we have examined the same evidence and maps which were submitted to the chancellor, we have reached the same conclusion he did. The judgment is therefore affirmed.